**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-4341-18T2

KIEN NHAN,

     Plaintiff-Appellant,

v.

CITY OF ATLANTIC CITY,

     Defendant-Respondent.

_____

Submitted January 21, 2020 – Decided April 17, 2020

Before Judges Messano, Ostrer and Susswein.

On appeal from Superior Court of New Jersey, Law Division, Atlantic County, Docket No. L-0107-18.

Jacobs & Barbone, PA, attorneys for appellant (Louis Michael Barbone, of counsel and on the brief).

Blaney & Karavan, PC, attorneys for respondent (Frank Guaracini, III, of counsel and on the brief).

PER CURIAM

     Appellant, Kien Nhan, is a former Atlantic City police sergeant who appeals from the trial court's order upholding his termination of employment

following a de novo hearing. Nhan is a compulsive gambler. He was originally disciplined in 2013 for various infractions, including the accumulation of substantial gambling debts that led to suicidal statements and discharging his service weapon. In 2015, Nhan pled guilty to departmental violations pursuant to a settlement agreement that called for a sixty-five-day suspension without pay. He was never permitted to carry his service weapon after the suicidal statements.

In 2016, the police department filed another disciplinary action based on Nhan's lie to a therapist, Dr. Glass, during a follow up fitness-for-duty evaluation. Nhan misrepresented that he had long since stopped gambling when in fact he continued to gamble and had only reduced the extent of his gambling activity. A forensic psychologist appointed by the police department, Dr. Guller, examined Nhan and determined that he was unfit to serve as a police officer.

The matter was referred for an evidentiary hearing after which the hearing officer sustained the disciplinary charges and termination of employment. Superior Court Judge James P. Savio conducted a de novo review of the record and found that the disciplinary charges had been proved by a preponderance of the evidence and that termination was appropriate.

2

Nhan claims on appeal that (1) the 2015 settlement agreement precludes the City from imposing further discipline based on prior events, (2) there was insufficient evidence to support his conviction for untruthfulness when he misrepresented his ongoing gambling activity during the fitness-for-duty evaluation, and (3) there was insufficient evidence to support the determination he is unfit to serve as a police officer. After reviewing the record in light of the applicable legal principles, we affirm Nhan's termination of employment substantially for the reasons set forth in Judge Savio's detailed and well-reasoned written opinion.

I.

We presume the parties are familiar with the facts surrounding the disciplinary infractions, which are thoroughly recounted in Judge Savio's ten-page single-spaced opinion. We do not repeat them here.

II.

We begin our analysis by acknowledging the legal principles that apply. First, in a disciplinary action, the truth of the charge must be proved by a preponderance of the evidence. In re Phillips, 117 N.J. 567, 575 (1990) (citing Atkinson v. Parsekian, 37 N.J. 143, 149 (1962)). N.J.S.A. 40A:14-150 governs the review of disciplinary convictions in non-civil service municipalities such

A-4341-18T2

as Atlantic City.  That statute provides that the Superior Court "shall hear the cause de novo on the record below and may either affirm, reverse[,] or modify such conviction."  N.J.S.A. 40A:14-150.  In a de novo proceeding, the Superior Court does not apply an abuse of discretion standard to the findings made by the hearing officer.  Rather, the Law Division judge makes his or her own findings of fact based on the record below. Phillips, 117 N.J. at 578.

Appellate courts play "a limited role in reviewing the de novo proceeding." Id. at 579.  An appellate court's "function on appeal is not to make new factual findings but simply to decide whether there was adequate evidence before the [Law Division] to justify its finding of guilt."  Ibid. (quoting State v. Johnson, 42 N.J. 146, 161 (1964)).  The de novo findings should not be disturbed unless we find the decision below was either (1) "arbitrary, capricious[,] or unreasonable" or (2) that the decision was not supported "by substantial credible evidence in the record as a whole."  Ibid.

### III.

We first address Nhan's claim the settlement agreement precludes the imposition of discipline based on any prior events because the agreement "specifically and unconditionally resolved all disputes between the parties that had occurred from 2012 to 2015."  We reject Nhan's contention.

4

In his written opinion, Judge Savio noted:

> On June 26, 2015[,] Nhan and the City of Atlantic City entered into a "settlement agreement and general release" related to the preliminary notice of disciplinary action dated November 27, 2013. Under the terms of the agreement, Nhan agreed to plead guilty to the four charges and accepted a suspension of six months. In paragraph two of the settlement agreement and general release, "employee, for himself, his heirs, executors, administrators, successors, and assigns hereby releases and forever discharges the City and its departments, clinical subdivisions . . . [.]" The release provides that it shall "apply to known, unknown, unsuspected and anticipated claims, liens, injuries and damages up to and including the date of the agreement."

Nhan relies on the last sentence of the quoted portion of the settlement agreement for the proposition that the City "released" him from the consequences of any pre-agreement actions. The sentence Nhan relies on, however, cannot be read in isolation but rather must be interpreted in the context of the section of the settlement agreement concerning release of claims. That section speaks only to Nhan's release of the City's liability. The section reads in its entirety:

> 2. <u>Release of Claims</u>. Employee, for himself, his heirs, executors, administrators, successors, and assigns hereby releases and forever discharges the City and its departments, political subdivisions, successors, and assigns, and their respective past, present and future representatives, council members, commissioners, officers, agents, employees, citizens, insurance

5

carriers, successors, and assigns, and the estate(s) of theirs from any and all action, causes of action, lawsuits, claims, charges, debts, sums of money, accounts, covenants, contracts, demands of any nature whatsoever, whether in law or in equity, or with any individual, agency, organization, or governmental body, whether known or unknown, which Employee ever had, now has, or can, shall, or may have under any contract, tort or common law theory, and/or under any Federal, State, local statute, including but not limited to . . . ; and any other Federal, State, or local equal employment opportunity laws, regulations, or ordinances; or under a theory of negligence; interference with contract/business advantage, fraud; intentional infliction of emotional distress; and/or any other duty or obligation of any kind or description. This release shall apply to all known, unknown, unsuspected, and anticipated claims, liens, injuries, and damages up to and including the day and date of this Agreement.

There is no comparable provision in this subsection, or in any other part of the three-page settlement agreement, in which the City releases Nhan from responsibility for his actions occurring before the agreement was executed. In short, nothing in the text of the agreement precludes the City from considering actions occurring before the settlement agreement. But even if we were to read into the agreement a proviso whereby prior conduct could not be the basis for future discipline, we believe Dr. Guller's psychological fitness evaluation, conducted after the agreement was executed, provides an ample basis to support Nhan's termination.

A-4341-18T2

IV.

Nhan next contends the de novo court "simply refused to analyze and determine anew whether [he] committed an act of untruthfulness." Nhan further argues that the evidence was insufficient to prove untruthfulness, claiming that although he admitted he lied to Dr. Glass when he said he had stopped gambling, that lie does not rise to the level of untruthfulness within the meaning of the applicable police department rule.[1] We disagree.

The written opinion confirms that Judge Savio understood that the City has the burden of proving the charges by a preponderance of the evidence. Judge Savio also recognized the high standards that police officers meet. See, e.g., Phillips, 117 N.J. at 577 (opining that police officers are held to a high standard of conduct). The court concluded that Nhan had "agreed to be truthful with therapists to aid in their diagnosis and formulation of a plan for his return to duty," and that Nhan "was untruthful when he responded to questions about gambling posed by [Dr. Glass]."

---

[1] Atlantic City Police Department Rule 3:5-7 reads: "Employees shall not knowingly lie, give misleading information, or falsify oral or written communications in any official report when it is reasonable to expect that the information may be relied upon because of the employee's affiliation with this department."

It bears noting that Judge Savio affirmed Nhan's conviction for this charge after finding that Nhan's testimony at the hearing was "illogical," "incredible, " and "the result of a willful lie proffered because Nhan would have this court order his reinstatement as an Atlantic City police officer and he was willing to say whatever he had to say to increase his chances of reinstatement."

We conclude that Judge Savio made his own credibility findings and did not simply defer to the hearing officer. Furthermore, defendant's admitted lie to Dr. Glass was, without question, material and substantial, especially when viewed in the context of a follow up fitness-for-duty examination. Kahn's fitness depended to a great extent on how he was addressing his gambling addiction and whether he was resisting treatment. That addiction was directly associated with his suicidal statements and misuse of his service firearm. Even if Nhan earnestly believed he was no longer suicidal, it was incumbent upon him to be truthful about his gambling activities during a fitness-for-duty psychological evaluation. We note in this regard that petitioner's gambling addiction presents risks besides depression, suicide, and misuse of a service firearm. His addiction also makes him more vulnerable to extortion and bribery matters of substantial concern with respect to the duties of a sworn police officer. We therefore reject any suggestion that the lie he told to Dr. Glass was inconsequential.

8

In sum, Judge Savio's ruling with respect to Nhan's untruthfulness is supported by substantial credible evidence and was not arbitrary, capricious, or unreasonable. <u>Phillips</u>, 117 N.J. at 579.

V.

Finally, Nhan contends that Judge Savino uncritically "accepted" Dr. Guller's opinion. This contention lacks sufficient merit to warrant discussion. <u>Rule</u> 2:11-3(e)(1)(E). We add only that Nhan did not present expert testimony to counter the opinion expressed by the City's expert.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION